IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

**SANDRA McNEIL,**

      **Plaintiff,**

**v.**                                             **Case 2:17-cv-02943-SHM-cgc**

**FEDEX CORPORATE SERVICES, INC.,**

      **Defendant.**

---

**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Before the Court is Defendant FedEx Corporate Services, Incorporated's ("FedEx") Motion for Summary Judgment (Docket Entry ("D.E.") #31). The instant motion has been referred to the United States Magistrate Judge for Report and Recommendation.[1] For the reasons set forth herein, it is RECOMMENDED that FedEx's Motion for Summary Judgment be GRANTED.

**I.**     **Introduction**

On December 29, 2019, Plaintiff Sandra McNeil filed a *pro se* Complaint alleging the following: discrimination and retaliation on the basis of her age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634, as amended; and,

---

[1] The instant case has been referred to the United States Magistrate Judge by Administrative Order 13-05 pursuant to the Federal Magistrates Act, 28 U.S.C. §§ 631-639. All pretrial matters within the Magistrate Judge's jurisdiction are referred pursuant to 28 U.S.C. § 636(b)(1)(A) for determination, and all other pretrial matters are referred pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) for report and recommendation.

discrimination and retaliation on the basis of sex and religion in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*., as amended. Plaintiff alleges that jurisdiction is conferred upon this Court by the aforementioned statutes as well as by 28 U.S.C. § 1331 and § 1343.

Specifically, Plaintiff alleges[2] that she has been employed by FedEx since on or about December 1985, with her most recent position being an Invoice Adjustment Agent. (Compl. ¶ 10 & Exh. 1). Plaintiff avers that she began experiencing negative treatment from her immediate supervisor, Tegaress Jones ("Jones"), who is in his forties, as well as from four other peers working in her department—Vicky Henderson ("Henderson"), Sharon Hoskins ("Hoskins"), Denesse White ("White"), and Carolyn Duncan ("Duncan")—all of whom are in their fifties. (*Id*.) Plaintiff states that she believes her peers "acted inappropriately and without values in their interactions," which she contends "interfered" with her religion. (*Id*.) Additionally, Plaintiff alleges that Jones "discussed an inappropriate topic" with her on one occasion in a meeting about her productivity before he terminated her employment the following month. (*Id*.) Plaintiff asserts that her decision not to participate in this discussion, as well as "other non-company related reasons" led to her termination. (*Id*.) She alleges that the discriminatory acts occurred in November 2016[3] and that FedEx is not still committing the acts against her. (Compl. ¶¶ 7-8). Plaintiff alleges that she was born in 1965 and was more than forty years old when the events giving rise to her Complaint occurred. (Compl. ¶ 9 & Exh. 1).

On September 22, 2017, Plaintiff filed her Charge of Discrimination ("Charge") with the Tennessee Human Rights Commission, which alleged discrimination and retaliation on the bases

---

[2] Plaintiff relies upon the allegations made in her September 22, 2017 Charge of Discrimination with the Tennessee Human Rights Commission, which is attached to her Complaint.

[3] The date is not legible but appears to be either November 28 or November 29.

of sex, age, and religion. (Compl. at Exh. 1). On September 29, 2017, the Equal Employment Opportunity Commission issued a Dismissal and Notice of Rights providing Plaintiff the right to sue in federal court. (Compl. at Exh. 1).

On October 18, 2019, FedEx filed the instant Motion for Summary Judgment asserting that all of Plaintiff's claims fail as a matter of law. (D.E. #31). Specifically, FedEx asserts as follows: (1) Plaintiff cannot establish a *prima facie* case of age discrimination as she was not qualified for her position, was not replaced by a person outside her protected class, and was not treated differently than similarly situated individuals; (2) FedEx had a legitimate, non-discriminatory reason for the employment actions taken against Plaintiff; (3) Plaintiff cannot establish that FedEx's reasons for its employment actions were pretextual; (4) Plaintiff cannot establish a *prima facie* case of hostile work environment on the basis of age; (5) Plaintiff cannot establish a *prima facie* case of retaliation under the ADEA; (6) Plaintiff cannot establish a *prima facie* case of discrimination on the basis of religion under Title VII; (7) Plaintiff cannot establish a *prima facie* case of hostile work environment based on sex or religion; and, (8) Plaintiff cannot establish a *prima facie* case of retaliation under Title VII. FedEx filed its Statement of Undisputed Material Fact ("SUMF") in support of its motion as required by Local Rule 56.1(a).

On November 8, 2019, Plaintiff filed her Response to Defendant's Motion for Summary Judgment.[4] Therein, Plaintiff generally restates the allegations of her Complaint and provides additional factual information that is not contained in her pleadings. Plaintiff fails to provide any evidence in opposition to FedEx's Motion for Summary Judgment. Plaintiff additionally fails to file a Response to Defendant's SUMF in violation of Local Rule 56.1(b).

---

[4] Plaintiff's Response is styled as being a Response to FedEx's "Motion to Dismiss"; however, as no such motion has been filed in this case, it is RECOMMENDED that the Court construe Plaintiff's Response as being to Defendant's Motion for Summary Judgment.

**II.     Proposed Findings of Fact[5]**

Plaintiff's date of birth is November 24, 1965. She was fifty-one years old when she was terminated on November 29, 2016. In 2013, Plaintiff began working as an Air Freight Invoice Adjustment Agent ("Agent"). She remained in this position until her separation from FedEx.

During all times relevant to this lawsuit, Plaintiff's immediate supervisor was Jones, Manager of Invoicing Services, who was a forty-one-year-old male. Jones had been Plaintiff's manager since June 16, 2015. Jones reported to Senior Manager Coleshia Winton ("Winton"), who was a forty-year-old female. Non-management employees in Plaintiff's work group who held the title of Agent were Hoskins, a fifty-three-year-old female; White, a fifty-four-year-old female; and, Duncan, a fifty-three-year-old female.

The Agents in Jones' workgroup were responsible for all Air-Freight Coding and Air-Freight Rating functions. The rating function refers to the process of determining a price for an air bill based on information relating to the shipper, recipient, and classification of the items within the shipment. After rating, Agents create an invoice. The coding function refers to the process of determining the customer responsible for the created invoice and where the invoice should be sent for payment. When Agents perform the rating function, they are expected to perform at a rate of twelve air bills per hour for a total of eighty-four air bills per day. When Agents perform the coding function, they are expected to perform at a rate of eighteen air bills per hour for a total of one hundred twenty-six air bills per day. Agents who met these metrics receive a satisfactory performance rating of 4. The metric refers to the number of documents

---

[5] Because Plaintiff failed to file a response to Defendant's SUMF, Local Rule 56.1(d) dictates as follows: "Failure to respond to a moving party's statement of material facts . . . within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment." Accordingly, it is RECOMMENDED that FedEx's SUMF should be deemed undisputed.

processed per hour and the corresponding performance review score. The review score is on a scale of 1 through 7, with 7 being the highest score attainable.

During October 2015, Plaintiff was assigned to perform the rating function. During that period, she failed to perform her rating work at a speed necessary to achieve a satisfactory performance rating of 4. Instead, Plaintiff earned a 3. All of the other Agents in Plaintiff's workgroup performed at a pace necessary to achieve a performance rating in excess of 4. On October 22, 2015, Plaintiff admitted in an e-mail sent to Jones that she had not been rating at a speed necessary to achieve a satisfactory performance rating of 4. Plaintiff also admitted that she needed to increase her production speed. On October 26, 2015, Jones sent Plaintiff a response advising her that they would review her performance metrics in thirty days and discuss the progress made. Jones also advised Plaintiff that he wanted to do everything he could to ensure Plaintiff's success.

On December 4, 2015, Jones advised Plaintiff by e-mail that her Metric Performance Rating for the month of November was a 1. Jones also advised Plaintiff that they would meet on Monday, December 7 at 9:30 a.m. to discuss performance improvement opportunities to help Plaintiff increase her rating. On January 6, 2016, Jones learned that Plaintiff spent seven hours and thirty minutes on the previous day performing administrative functions instead of performing her rating duties. The administrative function is time spent by the Agent during the work day for tasks such as training and reviewing email.

On January 26, 2016, Jones performed a "desk ride" with Plaintiff. A desk ride is when a manager sits at the desk of an employee to observe her methods of coding and/or rating. During Plaintiff's desk ride, Jones gave her suggestions on how to increase her productivity. On January

29, 2016, Jones sent an e-mail to Plaintiff stating, "Per our conversation in your one on one, please provide me a written performance improvement plan on Tuesday, February 2nd at 9:00 a.m. In this plan I expect what you are prepared to do in order to improve your performance. I also would like you to provide bullet point items that you feel you need training [on] and we will discuss on Tuesday . . . ." On February 16, 2016, Plaintiff responded to Jones' January 29, 2016 email stating, "My Improvement plan for obtaining a rating consists of rating 12 documents an hour which equals 1 document per 5 minutes. If a document should take more than 5 minutes, I will place the document on hold."

On May 12, 2016, Jones met with Plaintiff to discuss her performance. After their meeting, Jones sent Plaintiff an e-mail memorializing the meeting and provided Plaintiff a Performance Improvement Plan ("PIP"). On June 7, 2016, Jones sent an e-mail to Plaintiff stating, "Yesterday's PIPKINS data shows that you were in ADMIN task the entire day. This in unacceptable. You will be assigned [air bills] to process in accordance with the Performance Improvement Plan as discussed on May 12, 2016. You are expected to perform your job responsibilities as the rest of the team and you will be held to the same accountability measurements. If you do not comply with my request, this will be viewed as insubordination and may fall in line with the Work Avoidance Policy and will require disciplinary action."

On August 3, 2016, Jones changed Plaintiff's duties to the coding function. This change was made because the business needs of Jones' workgroup changed, as Jones lost two employees who performed coding functions, and because Jones believed the coding function was easier and would allow Plaintiff a better opportunity to raise her performance/production rating to an acceptable level.

6

On September 19, 2016, Plaintiff met with Winton, at which time Winton advised that Plaintiff would perform a desk ride with another peer, Sharon Ross ("Ross"). Winton also asked Plaintiff why she was not following the directives of management relating to coding and why she continued to answer emails during training. Plaintiff responded that she felt that other employees were being promoted for "inappropriate reasons." When Winton asked Plaintiff to specify what she meant, Plaintiff only stated that the reasons were "hearsay" and she "only had a feeling." After the meeting concluded, Winton sent Plaintiff an inter-office memorandum dated September 19, 2016, which provided a summary of their discussion.

On September 20, 2016, Winton again met with Plaintiff to follow up on their conversation from the prior day. After their meeting, Winton sent Plaintiff an e-mail stating, "TJ [Jones] will provide you with today's training plan which will consist of the ½ day of coding activity and the ½ day of observing. I encourage you to write down any questions you may have or needs of clarification. Please contact me if you have any concerns, questions, or need any assistance." At no time during Plaintiff's meetings with Winton did she complain about being the victim of sex, age, or religious discrimination.

On September 20, 2016, Plaintiff met with Jones to discuss her training schedule for the next two weeks. Jones advised Plaintiff that they would meet over the two-week period to review Plaintiff's progress and answer any questions or concerns that Plaintiff might have regarding her training. Plaintiff and Jones' conversation was memorialized in an email dated September 21, 2016. On September 30, 2016, Jones provided a training schedule designed to maximize Plaintiff's performance/production results and to minimize time she was spending in

7

the training function. Jones also advised Plaintiff that her coding productivity would not be measured for a period of thirty days.

On October 18, 2016, Jones observed Plaintiff sitting at her desk but not actively working in any of the coding queues. Jones then assigned Plaintiff air bills to code. Jones advised that he would review Plaintiff's progress every day at noon to ensure her progression. On October 25, 2016, Plaintiff was given a Warning Letter for Unacceptable Conduct due to her excessive use of administrative time.

On October 27, 2016, Jones discovered Plaintiff continuing to excessively record administrative time. Jones found Plaintiff used 2.5 hours of administrative time on October 25, 2016 and 2.09 hours of administrative time on October 26, 2016. Jones advised Plaintiff via e-mail that she had to seek approval to use more than fifteen minutes of administrative leave in the future. In the e-mail, Jones wrote, "All team members are allotted 15 minutes per day of admin[istrative] time. Please refrain from going over 15 minutes. If you need additional admin[istrative] time, please see me for approval."

On October 31, 2016, Jones discovered that Plaintiff recorded two hours of administrative time on that day without seeking approval. Jones asked Plaintiff why she recorded that amount of administrative time but received no response. The questions posed by Jones to Plaintiff were memorialized by e-mail. On November 22, 2016, Jones discovered Plaintiff was using administrative time for the entire day on November 21, 2016. Jones asked Plaintiff by e-mail why she had not produced any work as a result of administrative time. Jones again received no response.

On November 29, 2016, Jones met with Plaintiff and advised her that she was being terminated. At that meeting, Jones gave her a termination letter, which he read to Plaintiff in its entirety. The letter states in part as follows: "Please be advised that your employment is being terminated as of November 29, 2016, due to your display of unacceptable conduct in the workplace. Specifically, insubordination or refusal to follow instructions or perform assigned work in a timely manner without valid reason."

Jones did not hire any other employee to perform Plaintiff's position after her termination. At no time during Plaintiff's meetings with Jones did she ever complain about being the victim of sex, age or religious discrimination. Jones never made any comments relating to Plaintiff's sex, age or religion. On December 6, 2016, Plaintiff appealed her termination internally through FedEx's Explore Process. In the Explore Process Employee Information Form that Plaintiff completed, she failed to specify how she was being treated unfairly.

Plaintiff was asked in her deposition "why she felt she was being discriminated against." Plaintiff responded that she believed other people in her department may have been upset with her because she took the place of one of their friends who left the department. Plaintiff further stated, "I got along with everybody. And I can't help that their friend left the department—this person. I can't help that she left the department. . . . I don't know if they had taken that out on me because their friend left."

During her deposition, Plaintiff was unable to articulate the basis of her belief that she was terminated because of her age. Plaintiff was asked the basis of her belief that she was terminated because of her religion, to which she responded, "Just believe it." Plaintiff also

9

testified that the basis of her sex discrimination claim was that Jones invited her and other employees "to a dance club" and "the way Jones applied chapstick to his lips." Plaintiff also testified that the basis of her retaliation claim is her "belief that she was terminated because of a previous Explore Appeal she filed relating to an unidentified and undated warning letter in the past"; however, FedEx has no record of any prior Explorer Appeal filed by Plaintiff.

### III.     Analysis

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325. This may be accomplished by submitting affirmative

evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Title VII provides that discrimination on the basis of "race, color, religion, sex, or national origin" constitutes an unlawful employment practice. 42 U.S.C. § 2000e-2(a). The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

A plaintiff may establish a claim of disparate treatment based under Title VII or under ADEA by one of two means: (1) by introducing direct evidence of discrimination; or, (2) by proving circumstantial evidence which would support an inference of discrimination. *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). "The direct evidence and the

circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

Under the direct-evidence approach, a plaintiff must present evidence that, "if believed, *requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 2000). To successfully pursue a direct-discrimination claim, the evidence must establish, *without any inferences or presumptions*, that discriminatory motives caused the adverse employment action. *Nguyen v. City of Cleveland*, 229 F.3d 59, 563 (6th Cir. 2000); *see also Brack v. Shoney's, Inc.,* 249 F. Supp. 2d 938, 947 (W.D. Tenn. 2003). If the plaintiff introduces evidence of an adverse employment action on the basis of his protected status, the burden of persuasion shifts to the employer to prove that it would have taken the adverse employment action even had it not been motivated by discrimination. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989)).

Under the circumstantial evidence approach, the tripartite test established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), and later clarified in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), applies to determine if the conduct violated Title VII or ADEA. First, a plaintiff must establish a prima facie case of discrimination, which requires as follows: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently than similarly situated, non-protected employees. *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004).

If plaintiff establishes a *prima facie* case, a mandatory presumption of discrimination is created, and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. If the defendant meets this burden, then a plaintiff must prove that the reason proffered by the defendant is a pretext to hide unlawful discrimination. *Id.* The plaintiff may establish that the proffered reason is a mere pretext by showing that the stated reasons had no basis in fact, that the stated reasons were not the actual reasons, and that the stated reasons were insufficient to explain the defendant's action. *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991). "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993).

### i. ADEA Disparate-Treatment Claim

First, Plaintiff asserts that she suffered discrimination on the basis of age in violation of ADEA. Here, Plaintiff is a member of a protected class because she was over the age of forty at the time of the alleged discrimination. *See Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 589 (6th Cir. 2014). Additionally, she suffered an adverse employment action when her employment was terminated. *See Gliatta v. Tectum,* 211 F. Supp. 2d 992 (S.D. Ohio 2002) (citation omitted) ("It is undisputed that ultimate employment actions such as termination are considered adverse employment actions . . . ."). However, it is undisputed in the record that Plaintiff was unable to meet the requirements of her Agent position and, thus, was not qualified to perform it. Specifically, Plaintiff did not meet the performance metrics required for either the coding function. The record reflects that her performance rating was below satisfactory at all

13

times pertinent to these claims and that, at one point, it reached the lowest possible score. Additionally, Plaintiff spent excessive time performing administrative functions even after repeatedly being warned and being told that such time required prior approval. Plaintiff's poor performance continued after further training opportunities with her superiors and a peer, after being required to create a PIP, after being given easier job duties intended to help her succeed, after being told to seek assistance if needed, after being placed on a training schedule, after being told her conduct was unacceptable, and after being issued a warning letter. Plaintiff has not disputed FedEx's evidence of her lack of qualification. Thus, it is RECOMMENDED that Plaintiff was not qualified for her position as a matter of law.

Further, Plaintiff's *prima facie* case also requires that she was either replaced by a person outside her protected class or treated differently than similarly situated persons. However, no one was hired to replace Plaintiff's position after she was terminated. Additionally, Plaintiff has not identified anyone who was treated more favorably than her. Hoskins, White, and Duncan were managed by Jones, but they abided by the departmental rules relating to administrative time and maintained performance ratings above satisfactory. Henderson was not managed by Jones. Thus, it is RECOMMENDED that Plaintiff was neither replaced by a person outside her protected class or treated differently than similarly situated persons. Accordingly, it is RECOMMENDED that Plaintiff's ADEA claim of discrimination on the basis of age fails as a matter of law and should be dismissed.

### ii. ADEA Hostile-Work-Environment Claim

Second, FedEx posits that, should Plaintiff's ADEA claim be construed as one alleging a hostile work environment, she likewise cannot establish such a claim. An ADEA hostile-work-

14

environment claims requires four elements: (1) that the employee is 40 years old or older; (2) that the employee was subjected to harassment, either through words or actions, based on age; (3) that the harassment had the effect of unreasonably interfering with the employee's work performance and creating an objectively intimidating, hostile, or offensive work environment; and, (4) that there exists some basis of liability on the part of the employer. *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834-35 (6th Cir. 1996).

Here, there is no evidence that Plaintiff faced harassment of any sort based upon her age. Plaintiff instead claims that she was "got along with everybody" but that her co-workers may have been irritated that their friend left the department and taken that frustration out on her. Even so, Title VII is not a general civility code for the American workplace, *Burnett v. Tyco Corp.*, 203 F.2d 980 (6th Cir. 2000) (citation omitted), and personal conflict does not equate with discriminatory animus, *Morris v. Oldham Cty. Fiscal Ct.*, 201 F.3d 784, 791 (6th Cir. 2000). Thus, a distinction exists between "lawful conduct—even if insensitive—and discriminatory harassment." *Parks v. City of Chattanooga*, 74 Fed. Appx. 432, 444 (citing *Bowman v. Shawnee Faragher*, 220 F.3d 456, 464 (6th Cir. 2000)). Here, there are not even any evidence any incivility, conflict, or insensitive behavior even took place, much less that it was based upon Plaintiff's age; instead, Plaintiff is only suspicious that her co-workers may have been frustrated with her. This does not suffice to establish a hostile-work-environment claim. Accordingly, it is RECOMMENDED that Plaintiff's ADEA hostile-work-environment claim fails as a matter of law and should be dismissed.

### *iii. ADEA Retaliation Claim*

Third, Plaintiff asserts that she was subjected to retaliation in violation of the ADEA. To establish a *prima facie* case of retaliation under the ADEA, a plaintiff must show as follows: (1) that she engaged in activity protected by the ADEA; (2) that her engagement in protected activity was known by the employer; (3) that her employer took an adverse employment action against her; and, (4) that there was a causal connection between the protected activity and the employment action. *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 2007).

Here, there is no evidence in the record that Plaintiff engaged in activity protected by Title VII or that such exercise was known by the defendant. Although Plaintiff testified in her deposition that she pursued a previous Explore Appeal, which is an internal appeal at FedEx, and that this was the activity protected by Title VII that led to the retaliation, FedEx is aware of no such appeal, and Plaintiff has failed to provide evidence of one. Accordingly, it is RECOMMENDED that Plaintiff's ADEA retaliation claim fails as a matter of law and should be dismissed.

### *iv. Title VII Disparate-Treatment Claim on the Basis of Religion*

Fourth, Plaintiff argues that she suffered disparate treatment on the basis of religion in violation of Title VII. In order to demonstrate a *prima facie* case of religious discrimination, a plaintiff must show as follows: (1) that she holds a sincere religious belief that conflicts with an employment requirement; (2) that she has informed the employer about the conflicts; and, (3) that she was discharged or disciplined for failing to comply with the conflicting employment requirement. *Virts v. Consolidated Freightways Corp. of Delaware*, 285 F.3d 508, (6th Cir. 2002) (citing *Smith v. Pyro Mining Co.*, 827 F. 2d 1081, 1085 (6th Cir. 1987)). Only if the

16

plaintiff establishes a *prima facie* case does the burden shift to the employer to show that it could not reasonably accommodate the employee without undue hardship. *Id*.

Here, there is no evidence in the record that Plaintiff holds a sincere religious belief that conflicts with the rating and coding functions she was expected to perform as an Agent. There is also no evidence in the record that Plaintiff informed FedEx of any such conflicts. There is no evidence in the record that Plaintiff was discharged or disciplined for failing to comply with an employment requirement due to religious grounds; on the contrary, while Plaintiff testified that the Court should "[j]ust believe" that she suffered religious discrimination, Plaintiff's October 25, 2016 Warning Letter for Unacceptable Conduct clearly states that her discipline was due to her excessive use of administrative time. Accordingly, it is RECOMMENDED that Plaintiff's Title VII claim of discrimination on the basis of religion fails as a matter of law and should be dismissed.

> v. *Title VII Hostile-Work-Environment Claims on the Basis of Sex and Religion*

Fifth, Plaintiff asserts that she suffered discrimination on the basis of sex and religion in violation of Title VII, which FedEx addresses as a hostile-work-environment claim. To establish a hostile work environment under Title VII, a plaintiff must demonstrate as follows: (1) that she is a member of a protected class; (2) that she was subjected to unwelcomed harassment of a sexual or religious nature; (3) that this harassment was based on her protected status, whether her sex or religion; (4) that the harassment had the effect of unreasonably interfering with her work performance by creating a hostile work environment; and, (5) that there is a basis for charging the defendant with liability for this harassment." *Michael v. Caterpillar Financial Services Corp.*, 496 F.3d 584, 600 (6th Cir. 2007).

17

Here, Plaintiff alleges that Jones' act of inviting her and her peers to a "dance club" and the manner in which he applies his "chapstick" created the hostile work environment. However, there is no evidence either that she subjected to what she deems as unwelcomed conduct of a sexual or religious nature or that the unwelcomed conduct was based upon her sex or religion. In fact, as to religion, as already stated, there is no evidence in the record that Jones or anyone at FedEx was even aware of Plaintiff's religion. There is also no evidence as to how these two instances affected Plaintiff's ability to perform her job duties.

Finally, even if these two instances satisfied any of the foregoing, to constitute a hostile work environment under Title VII, the harassment must be "ongoing, rather than a set of isolated or sporadic instances." *Clark v. United Parcel Service, Inc.*, 400 F.3d 341, 351 (6th Cir. 2005) (citing *Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 411 (6th Cir. 1999). "[T]he victimized employee must show that under the totality of the circumstances, the alleged conduct is 'sufficiently severe or pervasive to altar the conditions of the victim's employment and create an abusive working environment.'" *Clark*, 400 F.3d at 351 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "Among the factors to be considered are 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark*, 400 F.3d at 351 (quoting *Harris*, 501 U.S. at 23). Here, there is no evidence in the record of any mistreatment on the basis of sex or religion, much less severe and persuasive harassment. There is also no evidence of any of the factors listed in *Clark* that would suggest that the perceived mistreatment rises to the level of a hostile work environment. Accordingly, it is RECOMMENDED that Plaintiff's Title VII claim of discrimination on the

basis of sex and religion due to a hostile work environment fails as a matter of law and should be dismissed.

### vi. Title VII Retaliation Claim

Finally, Plaintiff asserts that she suffered retaliation in violation of Title VII, which prohibits discrimination against an employee because that employee has engaged in conduct protected by Title VII. *See* 42 U.S.C. § 2000e-3(a). Plaintiff bears the initial burden to establish a *prima facie* case of retaliation, which requires that she demonstrate as follows: (1) she engaged in activity protected by Title VII; (2) her exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to plaintiff; and, (4) a causal connection existed between the protected activity and the materially adverse action. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (citations omitted).

Here, as with her ADEA retaliation claim, there is no evidence in the record that Plaintiff engaged in activity protected by Title VII or that such exercise was known by the defendant. Although Plaintiff testified in her deposition that she pursued a previous Explore Appeal, which is an internal appeal at FedEx, and that this was the activity protected by Title VII that led to the retaliation, FedEx is aware of no such appeal, and Plaintiff has failed to provide evidence of one. Accordingly, it is RECOMMENDED that Plaintiff's Title VII retaliation claim fails as a matter of law and should be dismissed.

### IV. Conclusion

For the reasons set forth herein, it is RECOMMENDED that FedEx's Motion for Summary Judgment (D.E. #31) be GRANTED.

**SIGNED** this 6th day of January, 2020.

               s/ Charmiane G. Claxton
               CHARMIANE G. CLAXTON
               UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**